## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARTIN RADOSTA** | * | **CIVIL ACTION** |
| | * | |
| **versus** | * | **No. 13-4441** |
| | * | |
| **LEXINGTON INSURANCE CO.** | * | **SECTION "L" (2)** |

### ORDER & REASONS

Before the Court is a motion for summary judgment filed by Defendant Lexington

Insurance Company ("Lexington"). (Rec. Doc. 44). The Court has reviewed the briefs and the

applicable law and, after hearing oral argument on the motion, now issues this Order and

Reasons.

## I.      BACKGROUND

This case arises out of a claim for damages to Plaintiff Martin Radosta's home in

Marrero, Louisiana, allegedly caused by Hurricane Isaac. According to Radosta, at the time of

the storm, Lexington provided a homeowner's insurance policy which covered the residence.

Radosta claims that the residence sustained substantial wind and rain damage during the

hurricane. Radosta claims that as a result of the hurricane, the residence was uninhabitable.

According to Radosta, he reported the wind damage to Lexington almost immediately. (Rec.

Doc. 1-1 at 5). Radosta claims that despite knowing about the covered damage to his house,

Lexington refused to tender sufficient payment. (Rec. Doc. 1-1 at 5). Radosta filed the present

lawsuit in the 24th Judicial District Court for the Parish of Jefferson on April 16, 2013. (Rec.

Doc. 1-1 at 4). Radosta is suing Lexington for breach of contract and bad faith claims adjusting.

1

(Rec. Doc. 1-1).  Among other things, Radosta is seeking compensation for property damage, loss of use, living expenses, repair and remediation expenses, loss of investment value, diminution of property value, extreme mental anguish, as well as statutory penalties under Louisiana Revised Statute §§ 22:1892 and 22:1973, attorney's fees and costs.  (Rec. Doc. 1-1 at 7).

On May 29, 2013, Lexington removed the case to this Court.  (Rec. Doc. 1).  On June 6, 2013, Lexington filed an answer asserting several affirmative defenses and denying Radosta's allegations.  Lexington claims that it has made "every effort to adjust this claim in good faith and in compliance with the provisions of the Policy and applicable law . . . ."  (Rec. Doc. 5 at 4).

Through status letters and status conferences, the parties informed the Court that there was a large discrepancy between the estimate of Lexington's adjuster and the estimate of Radosta's adjuster.  At the status conference held with the Court on August 30, 2013, the parties indicated that they wanted the Court to assist in appointing an umpire to appraise Radosta's property.  (Rec. Doc. 12).  Subsequently, both parties submitted lists of candidates to the Court. (Rec. Docs. 23, 26).  On September 27, 2013, the Court held another telephone status conference, during which time it appointed Mr. Bobby Marzine Harges as umpire.  (Rec. Doc. 25).  On December 16, 2013, Lexington filed a motion to stay pending the appraisal by Mr. Harges.  (Rec. Doc. 31).  In response to this motion, the Court held a telephone status conference and continued the trial in this matter from February 18, 2014 to May 27, 2014.  (Rec. Doc. 35). On March 19, 2014, the Court was again informed that the parties wished to have a telephone status conference to discuss upcoming deadlines, in light of the fact that Mr. Harges still had not issued a decision regarding the appraisal of the property.  This time, the Court was informed that

Mr. Harges planned to issue his decision in the coming days. (Rec. Doc. 39). In light of this, the Court scheduled another telephone status conference on April 3, 2014. On April 3, 2014, the parties informed the Court that Mr. Harges had issued a decision in favor of Radosta. Lexington explained that after receiving this decision, it paid Radosta the balance that was due to him. According to Lexington, this satisfied its obligation under the insurance contract. Lexington informed the Court that it planned to file a motion for summary judgment. In light of the upcoming deadlines in this matter as well as issues that have arisen regarding discovery in this case, the Court set an expedited schedule for this motion. (Rec. Doc. 43).

During the status conferences, Radosta informed the Court that Lexington was refusing to participate in any and all discovery. Lexington admitted that it had not responded to Radosta's discovery requests and explained that this refusal was motivated by the opinion that an award by the umpire would eliminate the need for any discovery. Lexington explained that it was concerned about unnecessary or repetitive discovery.

## II.   PRESENT MOTION

On April 4, 2014, Lexington filed the present motion for summary judgment. (Rec. Doc. 44 at 1). According to Lexington, on March 25, 2014, the umpire issued an award setting the total replacement cost value of Radosta's claim at $182,290.68. (Rec. Doc. 44). Lexington claims that three days later, on March 28, 2014, Lexington issued a check to Radosta for $147,790.68. This represents the amount of the award minus his deductible. (Rec. Doc. 44 at 1). Lexington claims that by doing so, it has satisfied its obligation under the insurance policy. Lexington quotes the insurance policy, which provides a procedure for appraisal by an umpire in the event that Radosta and Lexington disagree on the amount of loss. (Rec. Doc. 44-1 at 2). The

policy also provides that Lexington will pay Radosta for the loss 60 days after receiving the appraisal award.  (Rec. Doc. 44-1 at 2).

Lexington claims that it is entitled to dismissal of Radosta's breach of contract claims because it complied with the insurance policy.  (Rec. Doc. 44-1 at 3).  According to Lexington, Louisiana courts have recognized that appraisal provisions, like the one involved here, are legally enforceable.  Further, Lexington claims that Louisiana courts have found that appraisal awards are binding on the parties.  (Rec. Doc. 44-1 at 4).  Lexington argues that it discharged its duties under the policy by timely demanding an appraisal and promptly issuing a payment when the appraisal resulted in an award.  (Rec. Doc. 44-1 at 5).

Lexington also argues that it is entitled to dismissal of Radosta's bad faith claims. According to Lexington, Louisiana courts have held that timely payment of a valid appraisal award precludes recovery under Louisiana Revised Statute §§ 22:1892 and 22:1973.  (Rec. Doc. 44-1 at 5).  Lexington claims that recovery is only appropriate under those statutes when an insurance company acts arbitrarily, capriciously, or without probable cause.  (Rec. Doc. 44-1 at 5).  According to Lexington, Louisiana courts have found that an insurance company satisfies its statutory obligations where it complies with an appraisal clause.

Radosta opposes the motion for summary judgment.  (Rec. Doc. 46).  Radosta argues that his breach of contract claim should not be dismissed because Lexington breached the insurance contract by writing the check for less than what the umpire awarded and by including an improper mortgagee payee on the check.

Radosta also argues that his bad faith claim should not be dismissed.  Radosta claims that the Louisiana Insurance Code requires insurers to timely adjust the insureds' claims in good

faith.  Radosta recounts a timeline of events that took place preceding the present lawsuit.

According to Radosta, Lexington did not tender any payment until 86 days after it received his

proof of loss.  Radosta also points out that it was not until after this lawsuit was filed, and 176

days after receiving Radosta's proof of loss, that Lexington invoked the appraisal clause of the

insurance policy.  (Rec. Doc. 48 at 2).  Radosta argues that Lexington's later appraisal cannot

excuse its initial arbitrary and capricious failure to timely adjust his claim.  (Rec. Doc. 48).

Radosta further argues that his proof that Lexington acted arbitrarily will only be bolstered by

the information that is contained in Lexington's claim file.  (Rec. Doc. 48 at 6).  This claim file,

as well as other discovery requests, is the subject of a pending motion to compel.  Because

Radosta believes that Lexington acted in bad faith before it invoke the appraisal clause, Radosta

asks this Court to deny the motion for summary judgment.

## III.   LAW AND ANALYSIS

### A.   Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which the party will bear the burden of proof at trial."  *Id.*

When considering a motion for summary judgment, the district court "will review the facts

drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm*

*Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

      **B.**      **Breach of Contract**

      As to the breach of contract claim, the Court finds that there are no issues of material fact regarding Lexington's alleged breach of contract.  The insurance contract contained an appraisal clause which provided, in its entirety:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraisers will separately set the amount of loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of loss.

(Rec. Doc. 44-4 at 58).  The policy also provided that Lexington will pay the insured "60 days after we receive [the insured's] proof of loss and: 1. Reach an agreement with [the insured]; 2. There is an entry of a final judgment; or 3. There is a filing of an appraisal award with [Lexington]."  (Rec. Doc. 44-4 at 59).  Both parties agree that after this lawsuit was filed, Lexington invoked this appraisal clause.  (Rec. Doc. 48-1 at 23).  Both parties also agree that very shortly after the court-appointed umpire issued an award, Lexington wrote a check to Radosta for the amount of that award minus the deductible.  (Rec. Doc. 48-1 at 25-26).  The Court finds that the policy's appraisal clause is enforceable.  *See, e.g., St. Charles Parish Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, 681 F. Supp. 2d 748, 752 (E.D. La. 2010) ("Appraisal clauses such as these are enforceable under Louisiana law.").  Furthermore, Lexington complied with the language contained in this clause.

6

In his opposition, Radosta now claims that Lexington breached the insurance contract by tendering a payment that subtracted the deductible from the appraisal award and was, therefore, below the appraisal award.  According to Radosta, this deduction was improper because "Lexington had already subtracted the deductible . . . when it made its first tender on March 30, 2013."  (Rec. Doc. 48 at 6).  Previously, however, Radosta explained that Lexington's first checks were never tendered because of the addition of a third party lienholder who refused to endorse the checks.  (Rec. Doc. 48 at 2).  The insurance contract clearly stated that "[w]hen applicable, a deductible will be subtracted from your total claim and you will be paid the balance subject to applicable coverage limits."  (Rec. Doc. 44-4 at 5).  The umpire's appraisal award represented the "full settlement of all claims and counterclaims submitted to [the] Appraisal Panel."  (Rec. Doc. 48-1 at 25).  This award was for the total replacement cost value. Accordingly, it was appropriate and consistent with the terms of the insurance policy for Lexington to subtract the deductible.

Radosta also claims that Lexington breached the insurance contract by including an improper payee on the check.  Radosta claims that "Lexington included Florida Capital Bank as a mortgagee payee, but Radosta's mortgagee is Wells Fargo Bank.  Lexington had been made aware of the proper mortgagee and nonetheless included a different mortgagee on the check." (Rec. Doc. 48 at 6).  The insurance contract states that the mortgagee is "FLORIDA CAPITAL BANK NA DBA FLORIDA CAPITAL BANK MORTGAGE ISAOA ATIMA."  (Rec. Doc. 44-4 at 3).  While Radosta states that Lexington "had been made aware" that the proper mortgagee was actually Wells Fargo, he cites nothing to support this assertion.  Lexington included the mortgagee that is listed on the contract.  Radosta has not stated a valid claim for breach of

contract.[1]

C.     **Bad Faith Claims**

While Lexington's post-lawsuit actions comply with the insurance policy, the Court must also look at the pre-lawsuit conduct of Lexington.  Radosta claims that this pre-lawsuit conduct violated the Louisiana insurance statutes.

Louisiana Revised Statute Title 22 Section 1892 is entitled "Payment and adjustment of claims, policies other than life and health and accident; personal vehicle damage claims; extension of time to respond to claims during emergency or disaster; penalties; arson-related claim suspension."  Louisiana Revised Statute § 22:1892 provides, in relevant part:

> All insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest . . . .
>
> . . . In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant . . . .
>
> . . . All insurers shall make a written offer to settle any property damage claim, including third-party claim, within thirty days after receipt of satisfactory proof of loss of that claim.
>
> . . . Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss . . . .

Louisiana Revised Statute § 22:1892.  Louisiana Revised Statute Title 22 Section 1973 is

---

[1]It should also be noted that as soon as Lexington was told about the mistake regarding the mortgagee, it issued a new check to Radosta.  (Rec. Doc. 51-5 at 1).

entitled "Good faith duty; claims settlement practices; causes of action; penalties."  It provides, in relevant part:

> . . . An insurer . . . owes to his insured a duty of good faith and fair dealing.  The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both.  Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>
> . . . Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section: . . .
>
> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

La. R.S. 22:1973.

"One who claims entitlement to penalties and attorney fees [under these statutes] has the burden of proving the insurer . . . was arbitrary, capricious, or without probable case."  *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107 (La. 10/21/03); 857 So. 2d 1012, 1020.  "The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay."  *Id.* at 1021 (citing *Block v. St. Paul Fire & Marine Ins. Co.*, 32, 306 (La. App. 2 Cir. 9/22/99); 742 So. 2d 746, 751).  The Louisiana Supreme Court has explained that "arbitrary, capricious or without probable cause" means vexatious and unjustified.  *See La. Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08); 999 So. 2d 1104, 1114.  The plaintiff must show that the insurer willfully refused to pay and this refusal was not based on a good-faith defense.  *Id.* (citing *Reed*, 857 So. 2d at 1021).  If there is a reasonable and legitimate dispute regarding the extent of the

9

insurance claim, the court should not infer bad faith from an insurer's failure to pay within the time limits provided by statute.  *See Reed*, 857 So. 2d at 1021; *see also Block*, 742 So. 2d at 752 ("the statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and was acting in good-faith reliance on that defense . . . where there is a reasonable and legitimate question as to the extent and causation of a claim; bad faith should not be inferred from an insurer's failure to pay within the statutory time limits . . .").  The statutory penalties should only be imposed "in those instances in which the facts negate probable cause for non-payment."  *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1092 (La. 1985).

Significantly, whether the insurer acted arbitrarily, capriciously, or without probable cause depends on the facts and circumstances of the case and what the insurer knew at the time of its actions.  This is generally a factual issue.  *See id.*; *see also Block*, 742 So. 2d at 752 ("The determination of whether an insurer acted in bad faith turns on the facts and circumstances of each case.  This is because a prerequisite to any recovery under the statute is a finding that the insurer not only acted (or failed to act), but did so, arbitrarily, capriciously, and without probable cause . . . . [T]his determination is largely factual . . . .").  Because of the fact-intensive inquiry involved, a court should be reluctant to grant summary judgment on the issue of whether an insurance company acted in good faith.  *See* 15 William Shelby McKenzie and H. Alston Johnson, *Louisiana Civil Law Treatise: Insurance Law & Practices* §11:6 (4th ed.).  In *Merwin v. Spears*, the Louisiana Supreme Court reversed a district court's grant of summary judgment in favor of the insured and quoted a previous case in which it explained that "summary judgment is 'rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge, or good faith.'"  2012-0946 (La. 6/22/12); 90 So. 3d 1041, 1042 (quoting *Penalber v.*

*Blount*, 550 So. 2d 577, 583 (La. 1989)).

In the present case, there is persuasive evidence indicating that a legitimate dispute existed between Lexington and Radosta regarding the extent of Radosta's covered damages. Specifically, on October 8, 2012, Lexington sent a letter to Radosta explaining that it believed Radosta's wind damages were less than his deductible under the policy.  (Rec. Doc. 48-1 at 1). Lexington explained that this opinion was based on its adjuster's estimate of the damages.  (Rec. Doc. 48-1 at 1).  On January 3, 2013, Radosta submitted to Lexington an estimate produced by M&M Insurance Specialists, L.L.C., which found that Radosta's covered damages equaled $409,912.57.  (Rec. Doc. 48-1 at 9).  On January 22, 2013, Lexington acknowledged that it received Radosta's proof of loss, but rejected the proof of loss because Lexington believed that it was "not an accurate reflection of the identifiable loss covered by the policy."  (Rec. Doc. 48-1 at 20).  Then on March 30, 2013, 86 days after receiving Radosta's proof of loss, Lexington tendered $26,531.62 to Radosta as payment for his claim.  (Rec. Doc. 48-1 at 21-22).  After Radosta filed the present lawsuit on April 16, 2013, Lexington invoked the policy's appraisal clause.

Whether Lexington's delay beyond the statutory time limits was arbitrary, capricious or without reasonable cause is a question of fact that requires an analysis of all of the information that Lexington had before it when it acted.  Lexington's letter dated October 8, 2012 is certainly suggestive of the fact that Lexington's delay was based on a reasonable dispute regarding the extent of Radosta's claim, but it is not conclusive.  (Rec. Doc. 48-1 at 1).  Summary judgment is premature at this time, in light of the fact that Radosta has not been given an opportunity to investigate his claim by conducting discovery.  In order to ultimately succeed on this claim for

11

bad faith, Radosta will have the burden of proving that Lexington's delay was completely unjustifiable and not based on a good-faith dispute regarding the extent of Radosta's claim. This will be a heavy burden. It is possible, even probable, that Radosta will not be able to negate the possibility that Lexington's actions were based on a good-faith disagreement regarding the extent of Radosta's claim. However, it would be inappropriate for this Court to conclude that Radosta will be unable to prove his claim before he has even been given an opportunity to investigate through discovery.

Throughout its motion, Lexington relies heavily on the Louisiana Fourth Circuit Court of Appeal decision in *Long v. American Security Insurance Company*. 2010-0026 (La. App. 4 Cir. 11/17/10); 52 So. 3d 260. Lexington cites this case as holding that an insurance company's compliance with an appraisal clause precludes a finding that the insurance company acted arbitrarily, capriciously, or without probable cause. The Court disagrees with Lexington's interpretation of that case and finds that the present case is distinguishable. Here, Radosta contends that Lexington's pre-lawsuit delay violated the Louisiana insurance statutes. Lexington's compliance with the appraisal clause does not prevent this Court from finding that Lexington was arbitrary, capricious or without probable cause in delaying payment to Radosta after receiving his proof of loss before this lawsuit was filed.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Lexington's motion for summary judgment, (Rec. Doc. 44), is hereby **GRANTED IN PART & DENIED IN PART**. The motion is granted as to Radosta's breach of contract claims but denied as to Radosta's bad faith statutory claims.

**IT IS FURTHER ORDERED** that Radosta's motion to compel, (Rec. Doc. 40), is **GRANTED**.

**IT IS FURTHER ORDERED** that Radosta's motion in limine, made orally during oral argument, is **DENIED** as moot.

New Orleans, Louisiana, this 15th day of April, 2014.

_____
UNITED STATES DISTRICT JUDGE